MILWAUKEE & WYOMING INVESTMENT COMPANY V.
ADDISON B. JOHNSTON ET AL.

[FILED OCTOBER 26, 1892.]

1. **Principal and Agent:** AGENT'S AUTHORITY: USAGE: LIMI-
TATIONS.    Where a principal empowers an agent to transact
business with respect to which there is a well defined and pub-
licly known usage, the presumption is, in the absence of facts in-
dicating a different intent, that such authority was conferred in
contemplation of such usage, and persons dealing with such
agent in good faith will not be bound by limitations upon such
usual authority.

2. ———: ———: ———. But such usage, to bind a principal, must have existed for such a time, and become so widely and generally known, as to warrant the presumption that he had it in view at the time of the appointment of the agent.

3. ———: ———: ———: RULE APPLIED. The M. & W. I. Co., a Wisconsin corporation owning a cattle ranch in Wyoming, appointed one A. its agent in Wyoming with limited power, viz., to hire and pay for the necessary help, and pay the current expenses with money remitted on his statement, and to care for and round up the cattle and ship them when fit for market to Chicago in care of a particular commission house. In an action of replevin by the company aforesaid against J. & R., to recover cattle claimed by the latter to have been purchased from A. on the ranch aforesaid, *held*, error to receive evidence on the part of the defendants to prove that, at the time they purchased the cattle from A., it was the custom or usage of managers of cattle companies doing business in Wyoming to sell the cattle from the ranches of such companies, in the absence of any evidence that the plaintiff company had knowledge of such usage.

ERROR to the district court for Merrick county. Tried below before MARSHALL, J.

*George H. Noyes*, and *J. W. Sparks*, for plaintiff in error:

Where authority is conferred by an express agreement the extent thereof must be ascertained from the agreement or instrument itself, and cannot be enlarged, modified, or controlled by evidence of implied authority at variance with that which was given expressly. (Story, Agency, sec. 76; *Schooner Reeside*, 2 Sumner [U. S.], 567; *Dickinson v. Gay*, 7 Allen [Mass.], 29; 1 Greenleaf, Ev., sec. 292, 293; Mechem, Agency, sec. 274; *Hopper v. Sage*, 112 N. Y., 530.) Usage cannot enlarge or vary the authority or character of an agent, where such powers or authority have been conferred by express contract, or by instrument in writing. (*Robinson v. Mollett*, L. R. 7, H. L. [Eng.], 802; *Higgins v. Moore*, 34 N. Y., 417; *Hibbard v. Peek*, 75 Wis., 619; *Lamb v. Henderson*, 63 Mich., 302; Story,

Agency, sec. 76; *Assurance Soc. v. Ins. Co.*, 84 Va., 116; *Hermann v. Ins. Co.*, 100 N. Y., 411; 2 Parsons, Contracts, 546; *Graves v. Horton,* 38 Minn., 66; *Lucke v. Yoakum*, 25 Neb., 427; *Wanless v. McCandless*, 38 Ia., 24; *Bradley v. Wheeler*, 44 N. Y., 503.) Plaintiff must be shown to have knowledge of custom before it can be bound by it. (Mechem, Agency, sec. 262; *Walls v. Bailey*, 49 N. Y., 464; *Barnard v. Kellogg*, 10 Wall. [U. S.], 383; *Hopper v. Sage*, 112 N. Y., 530; *Pickert v. Marston*, 68 Wis., 465; *Power v. Kane*, 5 Id., 268; *Hall v. Storrs*, 7 Id., 277.) Every person who contracts with the officers or agents of a corporation must at his peril take notice of the limits of their powers. (*Wheeler v. Plattsmouth*, 7 Neb., 270, 279; *Graul v. Strutzel*, 53 Ia., 712, 715; *N. Y. I. M. v. Negaunee Bank*, 39 Mich., 644.) Representations by agent cannot establish fact of agency. (*Bond v. R. Co.*, 62 Mich., 643; *Delta Lumber Co. v. Williams*, 73 Id., 86.) Agent had no implied authority to sell. To authorize an inference of authority where none is expressly conferred, it must be practically indispensable to the execution of the duties really delegated. (*Bickford v. Menier*, 107 N. Y., 490; *Dodge v. McDonnell*, 14 Wis., 553*; *Coquillard's Adm'r v. French*, 19 Ind., 274; *Billings v. Morrow*, 7 Cal., 171; *Hodge v. Combs*, 1 Black [U. S.], 192.)

*John L. Webster*, contra, cited: *Spangler v. Butterfield*, 6 Col., 356; *Sacalaris v. E. & P. Co.*, 18 Nev., 155; *Adams M. Co. v. Senter*, 26 Mich., 73; *Grafins v. Land Co.*, 3 Phila., 447; *Lee v. Pitts C. M. Co.*, 56 How. Pr. [N. Y.], 376; *Griswold v. Gebbie*, 126 Pa. St., 353; *Ruggles v. American Cent. Ins. Co.*, 114 N. Y., 415; *McKiernan v. Lenzen*, 56 Cal., 61; *Antoine v. Smith*, 40 La. Ann., 560; *Brooks v. Martin*, 2 Wall. [U. S.], 70; *Niemeyer v. Wright*, 75 Va., 239; *Pratt v. Short*, 79 N. Y., 437; *Prince v. Church*, 20 Mo. App., 332; *Bowditch v. Ins. Co.*, 141 Mass., 292; *Larned v. Andrews*, 106 Mass., 435; *DeMers v. Daniels*, 39 Minn., 158.

*A. Ewing,* also, for defendants in error.

POST, J.

This was an action of replevin commenced by the plaintiff in error, a corporation organized under the laws of the state of Wisconsin, to recover the possession of 250 head of cattle. The plaintiff is organized for the purpose of acquiring land in Wyoming and raising and selling cattle therefrom. Its capital stock is $500,000, and its business is managed by a board of directors. It owns and carries on a ranch with a large number of cattle in Wyoming. By its by-laws, all deeds, contracts, and other instruments in writing to which the company may be a party, are required to be signed by its president and secretary, which latter officer is to affix the seal thereto. The president is invested with the general care and supervision of the affairs and property of the company. It is the duty of the treasurer to receive and pay all moneys, and he is custodian of contracts and other papers belonging to the company. The by-laws provide that there may be appointed, by the board of directors or executive committee, a manager and subordinate officers and agents, and further that the manager shall reside and keep his office in the territory of Wyoming, and shall have the charge and management, subject to the orders of the directors, of all the affairs and property of the company. He may appoint employes and agents necessary to protect and take care of the property and interests of the company, and fix their salaries subject to the approval of the board or the executive committee. He is prohibited from contracting any debt or entering into any contract involving an expenditure of more than $500, unless specially authorized by the directors or executive committee. The office of the company is to be in Milwaukee as well as those of the secretary and treasurer.

The testimony on behalf of the plaintiff was, in substance, that George Mitchell, a stockholder, director, and vice president of the company, managed its affairs in Wyoming down to the fall of 1887, when one Chadwick acted in that capacity until the fall of 1888, but neither had authority to sell the cattle, but shipped them as directed, to the commission house of Geo. Adams & Burke, Chicago, to sell and remit the proceeds to the treasurer at Milwaukee. At a meeting of the board of directors of the plaintiff, held in Milwaukee, July 7, 1887, the president was instructed to make such changes in the management of the ranch as might in his judgment be necessary for its more economical management, and that, in pursuance of such instructions, in November, 1888, he employed one Thomas R. Adams to perform certain specified duties on the ranch, instructing him to purchase supplies therefor, hire the men, and send in the accounts monthly to the treasurer at Milwaukee, who would remit the money for the payment thereof; to gather the cattle on the round up and ship them to George Adams & Burke, Chicago. Adams was given no authority to ship cattle elsewhere, nor was he authorized to sell or dispose of the cattle at any time or in any way or place. He had specific instructions from the officers of the plaintiff company not to sell any cattle from the ranch. These instructions were verbal, given him at the time of his employment and never modified thereafter. In addition to the above terms of hiring, there was no official or corporate action appointing Adams as manager, and no record in the minutes of the company of his employment. He had instructions in writing from the president of the company on or about the 20th of July, 1888, to consign about 300 four-year-old steers and 400 three-year-old steers to George Adams & Burke, billing them by the way of Omaha to Chicago to be sold at one or the other of such places by such commission house. It also appears undisputed by the record that

Adams had never sold any cattle prior to the time in question. It also appears to be undisputed that he had never sold anything from the ranch except some old fence wire, and exchanged with a neighboring ranch a part of a cow killed for beef, but such facts are unknown to plaintiff, or any of its officers or directors prior to the time of the institution of this suit.

The testimony on behalf of the defendants shows that in October, 1889, said Adams, through one T. D. Perrine, a cattle salesman of Omaha, negotiated a sale of 250 head of three and four year steers from the plaintiff's ranch to the defendants, at $22 per head; that the defendants were in Wyoming at the time of such transfer, and having been informed by Perrine of Adams' offer, directed the latter to look the cattle over and select 250 head from them and take charge of their shipment to Central City, Nebraska. Rush wrote out a check for $1,000 on a bank of Pittsburg, Pennsylvania, payable to Thomas Adams, which he gave to Perrine to be delivered to Adams as part payment for the cattle. The testimony is, that he made the check payable to Adams instead of to the company or its treasurer, or other of its officials, because at the time he could not think of the name of the company. A day or two after the delivery of the first check, Rush gave Perrine another check for $4,000, payable to Adams on a bank in Chicago, and authorized Adams to draw for the balance. Perrine deposited, in a bank at Cheyenne, Rush's check for $1,000, November 1; 1889; the check for $4,000, November 11, 1889, and a check for $480, on the 14th of November, 1889. This money was all checked out by Adams for his own use. This transaction with Adams was the first one that was ever had with him, either by Perrine or the defendants. Nor had either Perrine or the defendants ever before dealt with the plaintiff or any of its officers or employes, nor was it shown that either of the defendants had ever heard of a similar transaction by Adams. Soon after

this transaction Adams left the ranch and ran off to Canada. It appears that no bill of sale or other instrument, in writing, was delivered by Adams or received by the defendants for the cattle, and that no writing of any kind passed between them in the negotiations for, or the consummation of, the transfer and delivery of the cattle. The defendants, over the objections of the plaintiff, were permitted at the trial to show that there existed in the territory of Wyoming, at the time in question, a custom or usage for the manager or general manager of cattle ranches or cattle companies doing business in that territory to sell the cattle from the ranches, and that said Adams was such manager, as would, under such a custom of usage, be empowered to make a valid sale of cattle on the ranch. There is no evidence tending to prove that plaintiff or any of its officers had knowledge of such a custom or usage. On the other hand the positive evidence of all of such officers is, that if any such usage existed at the time in question it had never been heard of by them. The rule is, that where a principal entrusts to his agent the management of business with respect to which there is a known and generally recognized usage, as to third persons dealing with such agent the principal will be held to have intended him to act in accordance with such usage, and in the absence of notice thereof third parties will not be bound by any limitation upon such usual authority. But this rule has its limitations. For instance, it is said by Mechem in his recent work on the Law of Agency, sec. 281 : "In order to give the usage this effect it must be reasonable; it must not violate positive law, and it must have existed for such a time and become so widely and generally known as to warrant the presumption that the principal had it in view at the time of the appointment of the agent; but if the usage was a purely local and particular one, the principal may repel this presumption of knowledge by showing that in fact he had no notice of it;" and the doctrine of the cases in this country

may be summarized thus—Custom or usage in a trade or business may be shown for the purpose of interpreting a contract or controlling its execution, but not for the purpose of changing its intrinsic character, provided it is known to the party sought to be charged thereby, or is so well settled and so uniformly acted upon as to create a reasonable presumption that it was known to both contracting parties and that they contracted with reference to it. (*Bradley v. Wheeler*, 44 N. Y., 495; *Walls v. Bailey*, 49 Id., 464; *Hopper v. Sage*, 112 Id., 530; *Paine v. Smith*, 33 Minn., 495; *Globe Milling Co. v. Minneapolis Elevator Co.*, 44 Id., 153; *Corcoran v. Chess*, 131 Pa. St., 356; *Brown v. Foster*, 113 Mass., 136; *Barnard v. Kellogg*, 10 Wall. [U. S.], 383; *Power v. Kane*, 5 Wis., 268; *Hall v. Storrs*, 7 Id., 253*; *Pickert v. Marston*, 68 Id., 465; *Raisin v. Clark*, 41 Md., 158; *Keystone v. Moies*, 28 Mo., 243; *Steele v. McTyers Adm'r*, 31 Ala., 677; *Reynolds v. Ins. Co.*, 36 Mich., 142.)

In Evans on the Law of Principal and Agent, 544, is cited with approval the case of *Robinson v. Mollett*, 7 Eng. & Ir. App. L. R., 802, which is quite similar to this. In that case it is said by Lord Chelmsford: "The effect of this custom is to change the character of a broker who is agent to buy for his employer into that of a principal to sell for him. No doubt a person employing a broker may engage his services upon any terms he pleases, and if a person employs a broker to transact business for him upon a market with the usages of which the principal is unacquainted, he gives authority to the broker to make contracts upon the footing of such usages, provided they are such as regulate the mode of performing the contracts and do not change their intrinsic character. * * * * Of course if the appellant knew of the existence of the usage and chose to employ the respondents without any restrictions upon them, he might be taken to have authorized them to act for him in conformity to such usage." He further says that such usage should have no application to a person ignorant of

39

its existence, particularly where it would give the agent an interest wholly opposed to that of his principal. It will be noticed (1) that the usage proved in this case is local in its application, since it is confined to the territory (now state) of Wyoming only; (2) the managing officers of plaintiff were ignorant of it if any such custom existed; (3) there is no evidence in the record which warrants the presumption that plaintiff, in appointing Adams as its agent, acted with reference to such a usage. The question at issue is the apparent scope or extent of Adams's authority with respect to the cattle on the ranch, and whether, under the circumstances of the case, strangers dealing with him were justified in assuming that he was authorized to sell and dispose of them. That question is to be determined (1) from the authority actually given by the plaintiff; (2) from the conduct of the parties with respect to the ranch and the property thereon. For it will not be questioned that if the conduct of Adams in that respect, within plaintiff's knowledge, was such as to warrant the defendants in believing that he was authorized to sell the cattle on the ranch, and that they bought and paid for them relying upon such apparent authority, the plaintiff would now be estopped to deny their title, whatever may have been the authority actually conferred by it upon its said agent.

We think that the court erred, therefore, in receiving evidence of a usage for managers to sell cattle, the product of the ranches of Wyoming. It is, without doubt, competent for persons or corporations engaged in a like business to entrust to a manager or general agent the power to sell and dispose of their property. It may be further admitted that said authority has been conferred by a majority of cattle companies doing business in that state. But the rule contended for by defendants in this case would, in our opinion, prove subversive of the interests such companies are intended to promote. Since the judgment must be reversed, for reasons stated, it is not deemed necessary to consider the

other questions presented. With respect to the sufficiency of the evidence it may be said that we are not at liberty to presume that the same evidence will be adduced on a second trial. We have therefore no occasion to express an opinion upon that question. The judgment of the district court is reversed and the case remanded for a new trial.

REVERSED AND REMANDED.

THE other judges concur.