UNION STOCK YARDS COMPANY, LIMITED, V. GEORGE E. WESTCOTT ET AL.

FILED MARCH 3, 1896.    No. 6076.

1. **Custom and Usage:** EVIDENCE. Proof of knowledge is required to give effect to a custom, unless it is so widely and generally known, and so well established, as that knowledge thereof may well be presumed.

2. **Carriers:** WRONGFUL DELIVERY OF CONSIGNMENT: DAMAGES. A carrier who delivers property, for which a bill of lading has been issued, to any one except the owner and holder of such bill is liable for the loss thereby incurred.

3. ——: BILL OF LADING: DELIVERY OF GOODS. Directions contained in a bill of lading to notify a certain person of the arrival of the shipment at the place of destination is no authority to the carrier to make delivery of such ship-

Union Stock Yards Co. v. Westcott.

ment to the person so to be notified, without the production of the bill of lading.

4. **Action on Indemnity Bond:** LIABILITY OF SURETIES: PLEADING. *Held,* That the petition states a cause of action against the sureties upon an indemnity bond given to a stock yards company to secure it against any act or negligence of a certain firm of commission merchants.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

The facts are stated in the opinion.

*James M. Woolworth* and *Frank T. Ransom,* for plaintiff in error.

Reference: *Ryder v. Burlington, C. R. & N. R. Co.,* 1 N. W. Rep. [Ia.], 747.

*George G. Bowman, contra:*

The sureties have a right to stand upon the strict terms of their obligations. (*People v. Chalmers,* 60 N. Y., 154; *Chase v. McDonald,* 7 Har. & J. [Md.], 160; *Law v. East India Co.,* 4 Ves. [Eng.], 824; *Lang v. Pike,* 27 O. St., 498.)

Where carriers deliver, without the production of the bill of lading, property consigned to them for transportation, they wrongfully deliver it and assume the risk. (Hutchinson, Carriers, sec. 130; *Weyand v. Atchison, T. & S. F. R. Co.,* 75 Ia., 573; *Nat. Bank of Chester v. Atlanta & C. A. L. R. Co.,* 25 S. Car., 216; *Furman v. Union P. R. Co.,* 106 N. Y., 579; *Pennsylvania R. Co. v. Stern,* 119 Pa. St., 24; *McAleer v. Horsey,* 35 Md., 439; *Joslyn v. Grand Trunk R. Co.,* 51 Vt., 92; *Hieskell v. Farmers & Mechanics Nat. Bank,* 89 Pa. St., 155; *Dows v. Nat. Exchange Bank,* 91 U. S., 618; *Stollenwerck v. Thacher,* 115 Mass., 224; *McEntee v. New Jersey*

*Steamboat Co.*, 45 N. Y., 34; *Houston & T. C. R. Co. v. Adams*, 49 Tex., 748.)

The custom pleaded, being opposed to the rule that a carrier is liable for a wrongful delivery without the surrender of the bill of lading, can have no effect. (*Greene v. Tyler*, 39 Pa. St., 361; *Holmes v. Johnson*, 42 Pa. St., 159; *Delaplane v. Crenshaw*, 15 Gratt. [Va.], 457; *Bassett v. Lederer*, 1 Hun [N. Y.], 274; *Barnard v. Kellogg*, 10 Wall. [U. S.], 383; ' *Southwestern Freight & Cotton Press Co. v. Stanard*, 44 Mo., 77; *Randall v. Smith*, 63 Me., 105; *New York Firemens Ins. Co. v. Ely*, 2 Cow. [N. Y.], 678; *Perkins v. Franklin Bank*, 21 Pick. [Mass.], 483.)

A person is not bound by a custom unless he has personal knowledge thereof. (*Walsh v. Mississippi Valley Transportation Co.*, 52 Mo., 434.)

NORVAL, J.

This was an action against A. V. Miller and C. C. Miller, as principals, and George E. Westcott, Eli H. Doud, W. G. Sloane, and Frank Pivonka, as sureties, upon a bond of indemnity. Two general demurrers were interposed to the petition, one by the principals upon the said bond, and one by their sureties. The demurrer of the Millers was overruled, and the court entered judgment against them for the amount claimed. The demurrer filed by the sureties was sustained and the action dismissed as to them. Plaintiff complains of the judgment sustaining this demurrer. The following is a copy of the bond upon which the suit is brought:

"Know all men by these presents, that we, A. V. Miller and C. C. Miller, under the firm name

of Miller Bros., as principal, and George E. West-
cott, Eli H. Doud, W. G. Sloane, and Frank
Pivonka, as sureties, are held and firmly bound
unto the Union Stock Yards Company, Limited,
of Douglas county, state of Nebraska aforesaid,
in the sum of ten thousand dollars, good and law-
ful money of the United States, to be paid to the
Union Stock Yards Company, Limited, to which
payment, well and truly to be made, we bind our-
selves, our heirs, executors and administrators,
firmly by these presents.    Signed and sealed with
our seal.

"Dated this 9th day of July, A. D. eighteen hun-
dred and ninety.

"The consideration of this obligation is such
that if the above bound, or either of them, or their
heirs, executors, and administrators, shall well
and truly pay, or cause to be paid, to the Union
Stock Yards Company, Limited, as follows: All
accounts, consisting of railroad freight charges,
or advanced freight charges, all feed and yard
charges, and other charges that may occur,
or for any damage that may occur, in the
handling of stock in the aforesaid stock yards in
consequence of the mixing or turning out wrong
stock, or any act of A. V. Miller or C. C. Miller as
principal, or their agents or employes, by reason
of which the said Union Stock Yards Company,
Limited, shall suffer loss or damage, or by the
negligence of the said A. V. Miller and C. C. Mil-
ler's agents or employes, and to fully satisfy and
to pay the same upon demand, and to deliver up
all keys or other property, if any, belonging to the
said Union Stock Yards Company, Limited, when
called upon so to do, then this obligation to be

void; otherwise to remain in full force and effect.
"Dated July 9, 1890.

> "MILLER BROS.          [L. S.]
> "GEO. E. WESTCOTT.  [L. S.]
> "ELI H. DOUD.           [L. S.]
> "FRANK PIVONKA.    [L. S.]
> "W. G. SLOANE.

"Signed and sealed in presence of
"_____ _____."

The petition alleges, in substance, the incorporation of the plaintiff, and that it owns and operates the stock yards at South Omaha; that the Millers were partners engaged in the live stock commission business in said city, under the name of Miller Bros.; that about the time they commenced said business at said place, and in order to receive permission to carry the same on, in, and upon plaintiff's premises, and to secure plaintiff against all acts, doings, or default of said Miller Bros. in and about the conducting of said business of live stock commission merchants, the defendants executed and delivered to plaintiff the bond set out above; that in January, 1891, one E. B. Rogers was the owner of fifty head of cattle, which he had purchased with funds furnished him by the Merchants Bank of Sidney, which cattle were then in the possession of said bank, and held by it to secure the sum of $1,250, the amount so advanced; that said Rogers, as further security, made and delivered to said bank a draft, in words and figures as follows:

"$1,250.   SIDNEY, NEBRASKA, January 19, 1891.

"Pay to the order of Edward M. Mancourt, cashier, twelve hundred and fifty dollars, for value received, and charge the same to the account of                          E. B. ROGERS.

"To Miller Bros., South Omaha, Nebraska."

That when said sum was so advanced, it was understood between the bank and Rogers that said cattle were to be shipped to South Omaha in the name of the bank, and that the bill of lading therefor should be taken from the railway company conveying said cattle and attached to a draft for the amount of the bank's advances; that on January 20, 1891, the bank shipped for its own benefit, in its cashier's name, from Sidney to South Omaha over the Union Pacific railway all of said cattle, taking the bill of lading for said shipment, showing Mancourt, the cashier, to be both consignor and consignee; that said bill of lading had the words "Notify Miller Bros." written thereon, which was a direction to plaintiff when the cattle were received in its yards to notify Miller Bros. of their arrival; that the bank attached said draft to the bill of lading and forwarded the same through the usual mode to South Omaha for collection against Miller Bros., and that by reason of said facts they were not entitled to receive said cattle until they paid said draft and obtained the bill of lading attached thereto; that said cattle were carried to, and received by, plaintiff at its yards in South Omaha, and placed in pens to await the orders of the owner, and while there Miller Bros. called upon and produced to plaintiff a written order purporting to be signed by said Mancourt, in whose name they had been shipped, directing the delivery of said cattle to Miller Bros. by plaintiff; that said order had not been signed by said Mancourt nor by his authority, but was forged, which Miller Bros. at the time well knew, yet they represented to the plaintiff that the same was genuine and that they were authorized to receive said cattle; that thereupon

plaintiff, not knowing of the rights of said bank in and to said cattle, but believing said order to be genuine, and relying thereon, and upon said representations, delivered said cattle to Miller Bros., who sold them upon the market, received the proceeds, and retained the same, and refused to pay such proceeds over to said bank or the plaintiff, or to pay said draft; that it was the custom with the plaintiff, at and before the execution of said bond, and ever since has been, to permit live stock commission men, whom the way-bill of shipment of cattle directed plaintiff to notify of the arrival thereof, to receive such cattle without the production of the usual bill of lading, and it is customary for the live stock commission merchant so notified to demand and receive the shipment without waiting the arrival of the usual bill of lading, which custom was well known to Miller Bros. and observed by them. The petition further alleges that the bank brought suit against this plaintiff for the value of the cattle, and at the request of Miller Bros., the Stock Yards Company employed counsel and defended said action upon a statement of facts furnished by Miller Bros.; that the bank recovered a judgment therein for the sum of $1,317.07, and costs taxed at $58.83, which sums the Stock Yards Company was compelled to and did pay, and the further sum of $150 expended by it for attorneys' fees in defending said action, no part of which amounts have been paid by Miller Bros., although requested so to do, save the sum of $700.

The question raised by the demurrer is whether the acts of the plaintiff in turning out the cattle in question to Miller Bros., the sale thereof by the latter, and the conversion by them of the proceeds

arising from such sale are covered by the conditions of the bonds in suit, so as to bind the sureties therein.   It must be conceded that the conditions contained in this bond are broad and comprehensive in their scope and nature.   They, among other things, bind the sureties to pay all loss or damages which the obligee shall sustain resulting from any act or negligence of Miller Bros. or their agents or employes.   If the plaintiff was justified in delivering this shipment of cattle to Miller Bros. without requiring the production by them of the bill of lading, then it is entitled, upon the facts pleaded, to recover against the defendants sureties; otherwise the demurrer was rightly sustained.   The important inquiry in the case is whether plaintiff was or was not in fault in delivering the cattle to Miller Bros.   Defendants insist that the delivery was an act of negligence on the part of the plaintiff, while the Stock Yards Company contends against the proposition.

It is conceded by counsel for plaintiff that where a person delivers property, for which a bill of lading has been issued, to any one except the owner and holder of said bill, he does so at his own risk, and is liable for the value of the property.   The proposition is sound and abundantly sustained by the authorities.   (Hutchinson, Carriers, sec. 130, and cases cited in brief of defendants; *Shellenberg v. Fremont, E. & M. V. R. Co.,* 45 Neb., 487.)   As an excuse for the delivery of the cattle without the production of the bill of lading issued by the railway company, plaintiff relies upon the custom which it alleges existed at the time the delivery was made as well as when the bond was executed.   Undoubtedly it is competent in many cases for a party to allege and prove that

a particular custom existed. As was said by the
present chief justice in his opinion in *Milwaukee &
Wyoming Investment Co. v. Johnston*, 35 Neb., 561:
"Custom or usage in a trade or business may be
shown for the purpose of interpreting a contract
or controlling its execution, but not for the pur-
pose of changing its intrinsic character, provided
it is known to the party sought to be charged
thereby, or is so well settled and so uniformly
acted upon as to create a reasonable presumption
that it was known to both contracting parties, and
that they contracted with reference to it." A cus-
tom which is uniform, long established, and gen-
erally acquiesced in, and so widely and generally
known as to induce the belief that the parties con-
tracted with reference to it, is binding without
proof of actual notice thereof to the parties. But
a person is not bound by the custom or usage of
an individual unless personal knowledge thereof
is brought home to the party sought to be charged.
In 27 Am. & Eng. Ency. of Law, p. 749, it is said:
"In regard to the usage of a particular individual,
it may be said that no person without knowledge
of such usage can be bound by it in his dealings
with the individual. It would be unfair to hold
that the business usage of a particular bank, or
merchant, or manufacturer, or hotel-keeper, could
have any effect upon the rights of a person dealing
in ignorance of such usage. But if the usage be
known and assented to, and dealings are had with
such knowledge and assent, the usage impliedly
forms a part of the contract between the parties,
and is therefore binding." (See *Walsh v. Missis-
sippi Valley Transportation Co.*, 52 Mo., 434; *Stout
v. McLachlin*, 38 Kan., 121; *Bliven v. New England
Screw Co.*, 23 How. [U. S.], 420; *Loring v. Gurney*,

5 Pick. [Mass.], 15; *Keogh v. Daniell*, 12 Wis., 181; *Celluloid Mfg. Co. v. Chandler*, 27 Fed. Rep., 9; *Scott v. Maier*, 56 Mich., 554.) Applying the doctrine stated to the case at bar, it is obvious that the sureties are not bound by the custom set up in the petition. No general custom or usage among stock yards companies is pleaded, but that it was customary with this plaintiff alone to deliver cattle to commission men whom the way-bill directed it to notify of the arrival of the shipment, without producing the usual bill of lading. Notice of such custom to Miller Bros. is alleged, but it is not averred that the sureties had any knowledge of its existence, therefore it cannot be said that they signed the bond with reference to plaintiff's custom.

Reliance is made by plaintiff upon the fact that the bill of lading accompanying this shipment contained directions to notify Miller Bros. of the arrival of the stock at plaintiff's yards in South Omaha. It is argued that the clause referred to in the bill of lading was evidence to plaintiff that it was the intention of the shipper that the persons designated to be notified were his agents to make the sale of the cattle, and the stock yards company had a right to rely upon the honesty of such agents and trust them with the shipment. If this were true, it would have been sufficient to defeat the action brought by the Merchants Bank of Sidney against this plaintiff for the value of the stock. But the direction in the bill of lading to notify Miller Bros. did not authorize the plaintiff herein to deliver the stock without the production of the bill of lading. Hutchinson, Carriers [2d ed.], sec. 131b, in discussing this subject, says: "It is a common practice, where the bill of lading pro-

vides for delivery to the consignor's order and has
gone forward attached to a draft on the purchaser
or other person by whom payment is to be made,
to give directions that such person be notified of
the arrival of the goods in order that he may pay
the draft and procure the goods. Such a direction
to notify, however, does not dispense with the pro-
duction of the bill of lading as in other cases, and
if the carrier delivers the goods to the person so
to be notified without requiring him to produce
the bill of lading, he will be liable for the loss
thereby incurred." The following cases are di-
rectly in line with the above decision: *Bank of
Commerce in Buffalo v. Bissell*, 72 N. Y., 615; *Fur-
man v. Union P. R. Co.*, 106 N. Y., 579; *Myrick v.
Michigan C. R. Co.*, 107 U. S., 102; *North P. R. Co.
v. Commercial Bank of Chicago*, 123 U. S., 727; *Jos-
lyn v. Grand Trunk R. Co.*, 51 Vt., 92; *Libby v.
Ingalls*, 124 Mass., 503; *North v. Merchants & Miners
Transportation Co.*, 146 Mass., 315; *Nat. Bank of
Chester v. Atlanta & C. A. L. R. Co.*, 25 S. Car., 216.
Whilst Miller Bros. were to be notified of the ar-
rival of the stock, yet this fact did not authorize
them to receive the cattle without the production
of the bill of lading. The use of the words "Miller
Bros." in the bill of lading showed that they were
not intended as the consignees, but indicated
merely that they were to be advised of the arrival
of the cattle. Besides, it was stated in the bill of
lading that Mancourt was the consignee, and this
the plaintiff knew, or should have ascertained, be-
fore parting with the possession of the stock.
Delivery could alone be safely made to the con-
signee or to some one authorized by him to receive
the cattle.

Considerable stress is laid upon the fact that

Miller Bros. obtained possession of the cattle by reason of a spurious order for their delivery purporting to have been signed by the consignee. Of course, as between the owner of the bill of lading and this plaintiff, that fact could make no difference, since the forged order conferred no authority upon plaintiff to deliver the cattle to the persons presenting it. This is too obvious to require discussion. That the Stock Yards Company was liable to the consignee of the cattle for their value, there can be no question. If the sureties are liable to the plaintiff, it is by reason alone of the fact that their principals obtained possession of the cattle upon the fictitious order already mentioned, and failed to account for the proceeds. The question, therefore, presented for determination is whether the receiving of the shipment in controversy by Miller Bros. upon an order which they at the time knew to be forged, and which they falsely represented to plaintiff to be genuine, is within the stipulations or conditions of the bond which is the foundation of this action. Although, where a person delivers property consigned for transportation without the production of the bill of lading therefor, if one is issued, it is at his own risk, it does not follow that he is liable in damages in case the delivery is made to the party entitled to receive the same, notwithstanding the bill of lading is not exhibited or produced. The bill of lading is the evidence of the holder of his right to receive the shipment, but its surrender or production is not indispensable to a proper delivery. It would be difficult, we apprehend, to find any one to contend against this proposition. The important thing is that the shipment is received by the person entitled thereto. Had the cashier of the

bank given an order to plaintiff to deliver these cattle to Miller Bros., then it is obvious plaintiff would have been protected in turning out the stock to them though no bill of lading was produced. But that was not done. On the contrary, possession of the cattle was obtained from plaintiff by Miller Bros., who had no right to them, upon an order presented by them which they represented to be the genuine order of the owner of the stock, when they knew it was fictitious. It was this act that occasioned the loss to plaintiff, and it falls within the scope of the bond, since the sureties obligated themselves to indemnify plaintiff against loss or damage it might sustain by reason of "any act" of their principals. As between these sureties and the plaintiff, the latter, under the facts pleaded, cannot be charged with negligence in making the delivery.

It is said that the shipment would have been delivered, even though the order had not been presented, inasmuch as it was the custom with plaintiff to allow commission men to whom the way-bill directed it to notify, to receive the shipment without waiting the arrival or production of the bill of lading. Although such custom is pleaded, it does not appear that the delivery of the stock would have been made without the order, or if the fraud had not been practiced. On the contrary, it is affirmatively stated that plaintiff in making the delivery relied upon said order and the representations of Miller Bros. that it was genuine, and that they were entitled to receive the cattle thereon. It is sufficient that plaintiff had a right to, and did in fact, rely upon the genuineness of the order and the representations of Miller Bros. in parting with the possession of the cattle, although it, in

part, may have been influenced by its local custom. Whether reliance was placed upon the order is a question of fact for the jury upon the trial of the case. From the views expressed it follows that the petition states a cause of action against the sureties, and the court erred in sustaining their demurrer. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.