Ross Gamble v. A. Stauber Manufacturing Company.

Filed January 19, 1897.   No. 7024.

Custom and Usage: Knowledge: Contracts.  The business usage of a particular individual is not admissible to interpret a contract between that individual and another in the absence of proof of knowledge by the other of such usage.  *Union Stock Yards Co. v. Westcott*, 47 Neb., 300, followed.

Error from the district court of Buffalo county.  Tried below before Holcomb, J.  *Reversed.*

*Calkins & Pratt*, for plaintiff in error.

*Marston & Nevius*, contra.

Irvine, C.

This was an action in replevin by the A. Stauber Manufacturing Company against Ross Gamble to recover goods described as "200 pairs of men's and boys' pants." The plaintiff had judgment for a portion of the goods, and the defendant brings the case here by proceedings in error.

It appears that one A. Sands was, in 1891, in business in Kearney.  On the 13th of October in that year he wrote the plaintiff as follows:

"*A. Stauber Mfg. Co.*—Gents: Yours of the 12th to hand.  You can send a sample line of your cashmere pants, price $2 to $4, and if prices and goods are satisfactory I will send you order.

"Yours resp.,                          A. Sands."

Thereupon a quantity of the articles which the parties see fit to designate "pants" was shipped by the plaintiff to Sands, and on October 16 the plaintiff mailed to Sands an invoice headed as follows:

"A. STAUBER MFG. CO.,
"Manufacturer of Warranted Pants, 1004, 1006, 1008
Fourth Street,
                    "CLINTON, IOWA, Oct. 16, 1891.
"Sold to Mr. A. Sands, Kearney, Neb.
"Payable in Chicago or New York exchange.
"Dec. 1, 6-10.   5-30."

Below this was a list of the goods shipped with prices, and across the face was printed the following: "If this bill is not correct in all respects, please notify us at once, as no allowance will be made at time of settlement." This was followed October 21 by a written order from Sands for a quantity of goods of the same character. These goods were shipped October 24, and invoiced in precisely the same form as the first shipment. The goods, in some way not disclosed, found their way into the possession of Mr. Gamble, from whom the plaintiff undertook to replevy both orders. The court instructed the jury that the second transaction was a sale to Sands and that as to the goods embraced in the second order the plaintiff could not recover.

The sole issue presented to the jury was whether the first transaction was a shipment of samples for inspection and return by Mr. Sands, or whether it was a sale. The plaintiff's letter of October 12, referred to in Sands' letter of the 13th, was not produced and there is no evidence as to its character. It will be at once observed that according to circumstances the first transaction may have been either a shipment of samples for inspection or a sale. Mr. Sands' letter of October 13 apparently contemplates a shipment to him of samples for inspection, but, if instead of complying with the directions of that letter the plaintiff shipped goods under such circumstances as to imply an intention to make an absolute sale and Sands received the goods and detained them, there can be no doubt that the plaintiff might have recovered as for a sale on a *quantum meruit*. Therefore it would be a sale and replevin would not lie. No document in evidence constitutes a complete written contract. The letter as

remarked plainly implies an order of samples for inspection. The invoice, on the other hand, as strongly implies a sale. Only one witness was called—the secretary of the plaintiff company. He was permitted to testify, over the objections of the plaintiff, as follows:

Q. When such an order as this of the 13th of October, 1891, which has been introduced in evidence here, is received by this house asking for samples, what is the rule of the house, or your practice, with reference to those orders?

A. It is customary to send such goods out on memorandum, as nearly all houses do.

This was followed by an explanation that by memorandum was meant such a bill as accompanied these goods. In admitting this evidence we think the court erred. It was not sought to show a custom, or even a trade usage, either general or local, in its character. The evidence was merely as to the usage of one business concern, the plaintiff in the case. It was not shown that Sands had any notice of such usage, nor was any offer made to show that fact. Even in the case of a local custom, such knowledge must be brought home to the individual sought to be charged in order to render the custom available. (*Milwaukee & Wyoming Investment Co. v. Johnston*, 35 Neb., 554; *Union Stock Yards Co. v. Westcott*, 47 Neb., 300.) With regard to customs they may be so well established and so general that the parties are presumed to contract with reference thereto, but with regard to the usage of an individual, actual knowledge must be proved. (*Union Stock Yards Co. v. Westcott, supra.*) There was very little evidence in the case beyond what has already been detailed,—none in fact throwing any important light on the transaction. The documents from their terms leaving the transaction uncertain, the evidence referred to probably had serious weight with the jury. Its admission was certainly prejudicial, and its effect was not controlled in any way by the instructions.

REVERSED AND REMANDED.