HENRY McKEE ET AL. V. NICHOLAS WILD.

FILED JUNE 15, 1897. No. 7318.

1. **Sales: WARRANTY: ACTION FOR BREACH: PLEADING: ESTOPPEL.** In an action for breach of warranty respecting the quality of corn sold and delivered under a contract evidenced by the following letter: "We are pleased to confirm purchase from you to-day of 2,500 bushels, or five cars [of corn], 3 or better, at 28 cts. per bushel, f. o. b. Stockham, twenty days' shipment, to be shipped within —— days, Toledo weights and grades. Bill same to Wm. Louder, East St. Louis, O. & St. Louis Railroad at Council Bluffs, Ia., care Wabash Railroad at East St. Louis, and make draft with bill of lading attached on us here," *held*, (1) that the plaintiffs by declaring upon a breach of warranty elected to treat the purchase as completed upon the delivery of the corn called for free on board at Stockham;

(2) that they cannot contradict the allegations of their petition by asserting that the contract is executory merely and that the title of the corn did not pass upon the delivery thereof on the cars at Stockham.

2. ———: ———: DELIVERY: EVIDENCE. The provision, "Toledo weights and grades," as employed in said contract, does not of necessity imply the delivery at Toledo at defendant's risk. But for the purpose of an action by the purchaser for a breach of warranty respecting the quality of the corn sold is satisfied by proof of the delivery free on board at Stockham of corn which would grade No. 3 or better, according to the Toledo standard, the question of weight and quality being one of fact for the consideration of the jury.

3. Custom and Usage: CONSTRUCTION OF CONTRACT. Custom or usage in trade or business may be shown for the purpose of interpreting a contract or controlling its execution, although not for the purpose of changing its intrinsic character, provided it be known to the party sought to be charged, or is so well settled and so uniformly acted upon as to warrant the presumption that it was known to both contracting parties and that they contracted with reference to it. (*Milwaukee & Wyoming Investment Co. v. Johnston*, 35 Neb., 554.)

ERROR from the district court of Hamilton county. Tried below before BATES, J. *Affirmed.*

*F. I. Foss* and *W. R. Matson*, for plaintiffs in error.

*Hainer & Smith, contra.*

POST, C. J.

The plaintiffs in error, who were also plaintiffs below, alleged as their cause of action against the defendant in the district court for Hamilton county, "that on May 3, 1892, they bought of said defendant five car-loads, or 2,500 bushels, of corn, free on board at Stockham, Nebraska, to grade what is known as 'No. 3 or better,' at twenty-eight cents per bushel, to be billed at Stockham to order of William Louden, care Omaha & St. Louis Railway Company at Council Bluffs, Iowa, and care Wabash Railway Company at East St. Louis, to be shipped to Toledo, Ohio, said corn to be graded and weighed at Toledo, and the weights and grades returned from Toledo

were to be the number of bushels and grade the plaintiffs were to pay the defendant for, at twenty-eight cents per bushel, the defendant guarantying to plaintiffs that said corn should grade No. 3 or better." It is further alleged that the defendant, pursuant to said contract, on and previous to May 24, 1892, shipped five cars of corn, aggregating 2,499 bushels, against which he drew upon plaintiffs three drafts, with bills of lading attached, amounting to $670, which were in due time honored and paid, but that the corn so shipped did not, when received at Toledo, grade No. 3 or better and was, according to custom, sold upon its arrival there at prices ranging from four cents to thirty-seven cents below the ruling price of No. 3 corn, to plaintiffs' damage in the sum of $468.19, for which sum they prayed judgment. The defendant answered admitting the sale and shipment of the corn substantially as alleged, except that he denied having warranted the corn sold to grade No. 3 at Toledo. He alleged, also, that the corn sold was good merchantable corn and would, when shipped, have graded No. 3 or better under the rules prevailing at Toledo, but that the plaintiffs' agents engaged in the forwarding and transporting the same from Stockham were guilty of negligence and unreasonable delay, in consequence of which it was from two to six months en route and was suffered to become damp and heated, and that if it failed to grade No. 3 or better at Toledo, such fact was due to the negligence of plaintiffs' own agents and without fault or negligence of the defendant. The reply was in effect a general denial. The contract proved is evidenced by the following communication in writing:

"*Mr. N. Wild, Stockham, Neb.:* We are pleased to confirm purchase from you today of 2,500 bushels, or five cars, 3 or better, at 28 cents per bushel, f. o. b. Stockham, twenty days' shipment, to be shipped within —— days, Toledo weights and grades. Bill same to order Wm. Louden, East St. Louis, care O. & St. Louis Railroad at Council Bluffs, Ia., care Wabash Railroad at East St.

Louis, and make draft with bill of lading attached on us
here.                              McKee & Warner."

By reference to the petition it will be observed that the
plaintiffs declared upon a warranty, or guaranty, respect-
ing the quality of grain purchased. The title must ac-
cordingly be held to have passed upon the delivery of the
corn free on board at Stockham, since in order to recover
for a breach of warranty the title must have vested in the
plaintiffs. That the corn when delivered was such as
would have graded No. 3 at Toledo cannot, upon the evi-
dence adduced, be denied. The primary question is,
therefore, whether, as claimed by plaintiffs, the words
"Toledo weights and grades" employed in the contract,
import an assurance against actionable negligence by
common carriers in the transportation of the corn; in
other words, to which of the parties hereto are the rail-
road companies, upon this record, answerable for the
negligence resulting in the loss sustained? That ques-
tion is, in view of plaintiffs' own interpretation of the
contract, freed from any difficulty which would otherwise
attend it. The title having vested in plaintiffs upon the
delivery of the corn at Stockham, the conditions of the
warranty were satisfied, provided said corn was in qual-
ity such as would have graded No. 3 or better accord-
ing to the Toledo standard, the question of quality and
weight being one of fact to be determined by the jury.
In this connection may be cited the recent case of
*Lord v. Edwards*, 148 Mass., 476, the syllabus of which
reads as follows: "Warranty is of quality at port of ship-
ment, and not port of destination, under a contract evi-
denced by the following letter from the sellers to the buy-
ers: 'We have made sale to you of 1,200 tons extra M.
sugars, about No. 9 D. S. in color, at 10.10 per ton, f. o. b.,
and we understand it is your intention to load same on
the Republic on her arrival at M. It is further under-
stood that the sugar is sold on a basis of 88 degrees pol'r
with 3d. per cwt. per degree downwards, and fractions of
degree in proportion. The sugars to be thoroughly sam-

McKee v. Wild.

pled and tested on arrival.'" And the court, by Morton, C. J., referring to the closing sentence of the contract above quoted, say: "Both parties agree, and it is clear, that upon the delivery of the sugar on board the ship, and the payment for it, the property in it passed to the plaintiffs. It is equally clear that the defendants did not assume any risks of damage to the goods by the perils of the sea. It was a sale of certain goods of a specified quality at Manila, and not at New York. The nature and scope of the transaction being that of a completed sale of goods, which were to be exposed to the perils of the sea, and other risks of a long sea voyage, and which were taken entirely out of the custody or oversight of the sellers, it is not to be presumed that they assumed any risks of its future condition, unless there be an express and clear stipulation to that effect. The plaintiffs contend that such a stipulation is implied in the words 'the sugars to be thoroughly sampled and tested on arrival.' This is certainly not an express stipulation that the sugar, upon arrival in New York, shall be of a specified quality. It cannot be claimed under this clause that, if the goods were damaged by a peril of the sea, the defendants would be responsible. It does not import a warranty against damage by perils of the sea, and we cannot see that it necessarily or reasonably imports a warranty against damage from wet weather or from sweating, or other causes of deterioration operating during a long voyage. The clause in question seems to be an independent clause, inserted probably because it was thought important or desirable that the parties should know the condition of the sugar upon its arrival. Such knowledge might be important in case of any controversy as to the condition of the sugar when shipped. But whatever the reasons for its insertion, we cannot reasonably construe it as importing a stipulation which is contrary to the spirit and scope of the contract, which contemplated a completed sale and delivery at Manila." The reasoning there employed impresses us as altogether sound and we adopt without hesitation the conclusion to which it leads.

In the.brief of counsel for plaintiffs is found an exhaustive discussion of the subject of executory contracts exemplified by the citation of numerous cases holding tests prescribed by contract essential in order to divest the seller of his title. But, as above intimated, that question is eliminated from the present controversy by plaintiff's own interpretation of the contract. Having declared upon an executed agreement and sought in this action to recover for a breach of warranty as to the quality of property purchased, he is estopped to assert that the agreement is executory merely, or to deny that the title passed upon the delivery of the corn. (*Foley v. Holtry*, 43 Neb., 133.)

Exception was also taken to the exclusion of evidence offered to prove that grain purchased free on board in this state is, by recognized custom of dealers, forwarded at the shipper's risk, and that the title thereto does not pass until inspected and weighed at the point to which it is consigned. The evidence offered was inadmissible: (1.) Because it embraced the mere opinion of the witnesses. (2.) Its tendency was to vary the terms of the written contract as interpreted by the plaintiffs, and was a departure from the cause of action alleged in the petition. (3.) When a custom is relied upon to prove a meaning other than the ordinary significance of words used in a contract it should be pleaded. (*Lindley v. First Nat. Bank of Waterloo*, 76 Ia., 629.) (4.) It did not appear therefrom that the custom relied upon was known to the defendant, or that it was so well established and so uniformily acted upon as to warrant the presumption that it was known to both contracting parties and that they contracted with reference to it. (*Milwaukee & Wyoming Investment Co. v. Johnston*, 35 Neb., 554.) We discover no error in the record, and the judgment must be

AFFIRMED.